UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | DOCKET NO.: 3:23-cr-00173-RJC-DCK |
| v. | ) | |
| | ) | **FACTUAL BASIS** |
| ANTONY LINTON STEWART | ) | |
| | ) | |

NOW COMES the United States of America, by and through Dena J. King, United States Attorney for the Western District of North Carolina, and hereby files this Factual Basis in support of the plea agreement filed simultaneously in this matter.

This Factual Basis is filed pursuant to Local Criminal Rule 11.2 and does not attempt to set forth all of the facts known to the United States at this time. By their signatures below, the parties expressly agree that there is a factual basis for the guilty plea(s) that the defendant will tender pursuant to the plea agreement, and that the facts set forth in this Factual Basis are sufficient to establish all of the elements of the crime(s). The parties agree not to object to or otherwise contradict the facts set forth in this Factual Basis.

Upon acceptance of the plea, the United States will submit to the Probation Office a "Statement of Relevant Conduct" pursuant to Local Criminal Rule 32.4. The defendant may submit (but is not required to submit) a response to the Government's "Statement of Relevant Conduct" within seven days of its submission. The parties understand and agree that this Factual Basis does not necessarily represent all conduct relevant to sentencing. The parties agree that they have the right to object to facts set forth in the presentence report that are not contained in this Factual Basis. Either party may present to the Court additional relevant facts that do not contradict facts set forth in this Factual Basis.

1.      The defendant, Antony L. STEWART ("STEWART"), a citizen of Jamaica, intentionally defrauded and recruited others to defraud individuals in the United States through a fraudulent lottery telemarketing scheme operated from Jamaica.

2.      Beginning in or about 2010 through at least in or about August 2016, STEWART led a fraudulent lottery scheme in which he and his co-conspirators targeted victims in the United States. STEWART contacted victims of the scheme by telephone and told them that they had won money and other prizes in a sweepstakes or lottery. STEWART instructed victims to send thousands of dollars for fees or other expenses in order to release their purported lottery winnings. As a result, victims sent money to individuals in the United States and in Jamaica who then forwarded money at STEWART's direction. STEWART contacted victims repeatedly with additional requests for money for as long as the victim could be persuaded to send additional money. There was no lottery and no winnings were paid; rather, STEWART and his co-conspirators fraudulently kept the victims' money for their own benefit.

3. STEWART recruited co-conspirators in the United States and Jamaica to receive victim money through interstate Western Union and MoneyGram wire transfers, and by other means. He instructed his co-conspirators on what to do with the victim money they received.

4. STEWART instructed victims to send interstate packages containing thousands of dollars in cash through the U.S. Mail to his co-conspirators.

5. STEWART recruited individuals in the United States to personally meet co-conspirators in the United States in order to collect cash and other goods that were sent by victims.

6. STEWART used aliases when speaking to victims, including "James Carter" and "Robert Morgan." STEWART is known by the nicknames "Big Foot" and "Foot."

7. In or about 2010, STEWART recruited Co-conspirator A, who lived in Florida, to join in the operation of STEWART's scheme. As part of the scheme, STEWART directed Co-conspirator A to act as a money mule by receiving money from victims, retaining a percentage of the victims' money for Co-conspirator A's own benefit, and transferring the remainder of the victims' money to STEWART and to others at STEWART's direction.

8. STEWART contacted and caused to be contacted a seller of lead lists, who supplied the names, addresses, and telephone numbers of consumers in the United States who might respond to solicitations over the telephone. STEWART arranged for Co-conspirator A to pay the seller for lead lists using money that Co-conspirator A had received from victims of the scheme.

9. In or about 2011, STEWART recruited Co-conspirator B, who lived in New York, to join in the operation of STEWART's scheme. Co-conspirator B acted as a money mule by receiving money from victims, retaining a percentage of the victims' money for Co-conspirator B's own benefit, and transferring the remainder of the victims' money to STEWART and to others at STEWART's direction.

10. In or about 2015, STEWART recruited Co-conspirator C, who lived in Florida, to join in the operation of STEWART's scheme. Co-conspirator C acted as a money mule by receiving money from victims, retaining a percentage of the victims' money for Co-conspirator C's own benefit, and transferring the remainder of the victims' money to STEWART and to others at STEWART's direction.

11. The actions of STEWART and his co-conspirators in the conspiracy to defraud resulted in more than $550,000, but less than $1,500,000, resulting in a 14-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(H).

12. The fraudulent scheme involved ten or more victims, resulting in a 2-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i).

13. A substantial part of the fraudulent scheme was committed in Jamaica, resulting in a 2-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(10)(B).

14. The fraudulent scheme involved a misrepresentation that STEWART was acting on behalf of a government agency, resulting in a 2-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(9)(A).

15. The fraudulent scheme targeted at least one victim that STEWART knew or should have known was a vulnerable victim, resulting in a 2-level enhancement pursuant to U.S.S.G. § 3A1.1(b)(1).

16. STEWART was an organizer, leader, manager, or supervisor in the fraudulent scheme, resulting in a 2-level enhancement pursuant to U.S.S.G. § 3B1.1(c).

DENA J. KING
UNITED STATES ATTORNEY

*Raquel Toledo*

RAQUEL TOLEDO
SENIOR TRIAL ATTORNEY
CONSUMER PROTECTION BRANCH
U.S. DEPARTMENT OF JUSTICE

### Defendant's Counsel's Signature and Acknowledgment

I have read this Factual Basis, the Bill of Information, and the plea agreement in this case, and have discussed them with the defendant. Based on those discussions, I am satisfied that the defendant understands the Factual Basis, the Bill of Information, and the plea agreement. I hereby certify that the defendant does not dispute this Factual Basis.

_____   DATED: 7-28-2023
S. Frederick Winiker, III, Attorney for Defendant